JS 44 (Rev. 09/19)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

James and Clemmie Cash

**DEFENDANTS**

Stephen Pisini, 730 Main Street, Suite 2B, Millis, Norfolk County

**(b)** County of Residence of First Listed Plaintiff    State of Florida
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Rob Meltzer. Mtn States Law Group, 33 Bradford Street Concord MA
978 254 6289

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | |
|---|---|
| ❏ 1  U.S. Government Plaintiff | ❏ 3  Federal Question *(U.S. Government Not a Party)* |
| ❏ 2  U.S. Government Defendant | ☒ 4  Diversity *(Indicate Citizenship of Parties in Item III)* |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                             *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ❏ 1 | ☒ 1 | Incorporated *or* Principal Place of Business In This State | ❏ 4 | ❏ 4 |
| Citizen of Another State | ☒ 2 | ❏ 2 | Incorporated *and* Principal Place of Business In Another State | ❏ 5 | ❏ 5 |
| Citizen or Subject of a Foreign Country | ❏ 3 | ❏ 3 | Foreign Nation | ❏ 6 | ❏ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ❏ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ❏ 625 Drug Related Seizure of Property 21 USC 881 | ❏ 422 Appeal 28 USC 158 | ❏ 375 False Claims Act |
| ❏ 120 Marine | ❏ 310 Airplane | ❏ 365 Personal Injury - Product Liability | ❏ 690 Other | ❏ 423 Withdrawal 28 USC 157 | ❏ 376 Qui Tam (31 USC 3729(a)) |
| ❏ 130 Miller Act | ❏ 315 Airplane Product Liability | ❏ 367 Health Care/ | | | ❏ 400 State Reapportionment |
| ❏ 140 Negotiable Instrument | ❏ 320 Assault, Libel & | Pharmaceutical Personal Injury Product Liability | | **PROPERTY RIGHTS** | ❏ 410 Antitrust |
| ❏ 150 Recovery of Overpayment & Enforcement of Judgment | Slander | | | ❏ 820 Copyrights | ❏ 430 Banks and Banking |
| ❏ 151 Medicare Act | ❏ 330 Federal Employers' Liability | ❏ 368 Asbestos Personal Injury Product Liability | | ❏ 830 Patent | ❏ 450 Commerce |
| ❏ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ❏ 340 Marine | | | ❏ 835 Patent - Abbreviated New Drug Application | ❏ 460 Deportation |
| | ❏ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ❏ 840 Trademark | ❏ 470 Racketeer Influenced and Corrupt Organizations |
| ❏ 153 Recovery of Overpayment of Veteran's Benefits | ❏ 350 Motor Vehicle | ❏ 370 Other Fraud | ❏ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ❏ 480 Consumer Credit (15 USC 1681 or 1692) |
| ❏ 160 Stockholders' Suits | ❏ 355 Motor Vehicle Product Liability | ❏ 371 Truth in Lending | ❏ 720 Labor/Management Relations | ❏ 861 HIA (1395ff) | ❏ 485 Telephone Consumer Protection Act |
| ☒ 190 Other Contract | ❏ 360 Other Personal Injury | ❏ 380 Other Personal Property Damage | ❏ 740 Railway Labor Act | ❏ 862 Black Lung (923) | ❏ 490 Cable/Sat TV |
| ❏ 195 Contract Product Liability | ❏ 362 Personal Injury - Medical Malpractice | ❏ 385 Property Damage Product Liability | ❏ 751 Family and Medical Leave Act | ❏ 863 DIWC/DIWW (405(g)) | ❏ 850 Securities/Commodities/ Exchange |
| ❏ 196 Franchise | | | ❏ 790 Other Labor Litigation | ❏ 864 SSID Title XVI | ❏ 890 Other Statutory Actions |
| | | | ❏ 791 Employee Retirement Income Security Act | ❏ 865 RSI (405(g)) | ❏ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ❏ 893 Environmental Matters |
| ❏ 210 Land Condemnation | ❏ 440 Other Civil Rights | **Habeas Corpus:** | | ❏ 870 Taxes (U.S. Plaintiff or Defendant) | ❏ 895 Freedom of Information Act |
| ❏ 220 Foreclosure | ❏ 441 Voting | ❏ 463 Alien Detainee | | ❏ 871 IRS—Third Party 26 USC 7609 | ❏ 896 Arbitration |
| ❏ 230 Rent Lease & Ejectment | ❏ 442 Employment | ❏ 510 Motions to Vacate Sentence | | | ❏ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ❏ 240 Torts to Land | ❏ 443 Housing/ Accommodations | ❏ 530 General | | | ❏ 950 Constitutionality of State Statutes |
| ❏ 245 Tort Product Liability | ❏ 445 Amer. w/Disabilities - Employment | ❏ 535 Death Penalty | **IMMIGRATION** | | |
| ❏ 290 All Other Real Property | ❏ 446 Amer. w/Disabilities - Other | **Other:** | ❏ 462 Naturalization Application | | |
| | ❏ 448 Education | ❏ 540 Mandamus & Other | ❏ 465 Other Immigration Actions | | |
| | | ❏ 550 Civil Rights | | | |
| | | ❏ 555 Prison Condition | | | |
| | | ❏ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding   ❏ 2  Removed from State Court   ❏ 3  Remanded from Appellate Court   ❏ 4  Reinstated or Reopened   ❏ 5  Transferred from Another District *(specify)*   ❏ 6  Multidistrict Litigation - Transfer   ❏ 8  Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:

Brief description of cause:
Failure to return real estate contract deposit following breach by seller

## VII. REQUESTED IN COMPLAINT:

❏  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

**DEMAND $**
95,000.00

CHECK YES only if demanded in complaint:
**JURY DEMAND:**   ☒ Yes   ❏ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE
08/14/2020

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

1. Title of case (name of first party on each side only)_____

   Cash v. Pisini

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet.   (See local rule 40.1(a)(1)).

   [ ]   I.   160, 400, 410, 441, 535, 830*, 835*, 850, 891, 893, R.23, REGARDLESS OF NATURE OF SUIT.

   [✓]   II.   110, 130, 190, 196, 370, 375, 376, 440, 442, 443, 445, 446, 448, 470, 751, 820*, 840*, 895, 896, 899.

   [ ]   III.   120, 140, 150, 151, 152, 153, 195, 210, 220, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 367, 368, 371, 380, 385, 422, 423, 430, 450, 460, 462, 463, 465, 480, 490, 510, 530, 540, 550, 555, 560, 625, 690, 710, 720, 740, 790, 791, 861-865, 870, 871, 890, 950.

   *Also complete AO 120 or AO 121. for patent, trademark or copyright cases.

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

   _____

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES [ ]   NO [✓]

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?   (See 28 USC §2403)

   YES [ ]   NO [✓]

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES [ ]   NO [✓]

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES [ ]   NO [✓]

7. Do all of the parties in this action, excluding governmental agencies of the United States and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES [✓]   NO [ ]

   A.   If yes, in which division do all of the non-governmental parties reside?

   Eastern Division [✓]      Central Division [ ]      Western Division [ ]

   B.   If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

   Eastern Division [ ]      Central Division [ ]      Western Division [ ]

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES [ ]   NO [ ]

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME  Rob Meltzer/Mountain States Law Group
ADDRESS  33 Bradford Street, Concord MA 01742
TELEPHONE NO.  978 254 6289

(CategoryForm1-2019.wpd )

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO:

| | |
|---|---|
| JAMES CASH and CLEMMIE CASH ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| v. ) | COMPLAINT |
| ) | |
| STEPHEN C. PISINI, as TRUSTEE OF THE ) | |
| HENRY COREY REVOCABLE INSURANCE ) | |
| TRUST and STEPHEN C. PISINI, as TRUSTEE ) | |
| OF THE PATRICIA K. COREY REVOCABLE ) | |
| INSURANCE TRUST ) | |
| ) | |
| Defendant ) | |

### INTRODUCTION

This is a lawsuit arising out of the breach of a Purchase and Sale Agreement dated June 28, 2019 between the Plaintiffs, as "Buyers", and the Defendant, as "Seller," arising out of the Defendant's failure to comply with contract terms, thus terminating the Transaction and requiring the Defendant to return deposits totaling $95,000. To the extent that the Defendant's claim that the Plaintiffs breached by refusing to close on a lapsed Transaction, entitling the Defendants to retain the $95,000 deposit, the Plaintiffs seek declaratory judgment under

Massachusetts' "Grinspoon Doctrine" that a $95,000 deposit is an unlawful liquidated damage based upon excessiveness, and that the Plaintiffs are still entitled to return of their

1



The Mountain States Law Group®
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

deposits, as the Defendant has incurred no damages, and certainly no damages in relation to the magnitude of the deposit

## THE PARTIES

1. Plaintiffs, James and Clemmie Cash ("the Plaintiffs" or "Buyers") are Florida residents with an address of 340 South Palm Avenue, Apt 143 in Sarasota, in the state of Florida.

2. Defendant, Stephen C. Pisini, in his dual Trustee role ("the Defendant" or "Seller") conducts business at 730 Main Street, Suite 2B in Millis, Norfolk County in the Commonwealth of Massachusetts.

## JURISDICTION BY THIS COURT

3. Jurisdiction is established by complete diversity of the parties and the amount in controversy exceeds $75,000, meeting the monetary threshold requirements for exercise

4. By contract, this dispute is guided by Massachusetts law.

## FACTS

5. On or about June 28, 2019, the Plaintiffs and Defendant signed a Purchase and Sale Agreement appended hereto, Exhibit A, by which the Seller agreed to sell and the Buyers to buy what is referred to in Paragraph 2 of the Purchase and Sale Agreement as "land

2



The Mountain States Law Group
COLORADO · MASSACHUSETTS · UTAH
IDAHO · WYOMING · WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

and buildings known and numbered as 56.1 (4-56.1), 56 (#4-56) Temahigan Ave. & Lot #5

(#5-11) Beach St. Ext. Oak Bluffs, Massachusetts 02557…

6. The Plaintiffs provided deposits, pursuant to Paragraph 7, of $95,000.

7. The time of closing, pursuant to Paragraph 8, states that closing was to occur "on the later of August 15, 2019 or within 10 days of SELLER having completed installation of the new septic system with Board of Health approval…"

8. Paragraph 8 of the Purchase and Sale Agreement relates to Paragraph 30 of the Purchase and Sale Agreement, which states that "SELLER shall cause a new septic system to be designed, approved and installed at the lot which currently has a residence. The closing shall take place within 10 days of notification to counsel for BUYERS that the system has been installed and approved by the Board of Health. SELLER shall cause the system to be designed for and installed as a 6 bedroom septic system…. SELLER shall also provide documentation that the septic system at the vacant lot has been approved for 3 bedrooms."

9. There are several significant factors in the Purchase and Sale Agreement that must be noted:

    a. Paragraph 7 of the Purchase and Sale Agreement, the Purchase Price, sets the price for the "premises" at $1,897,500.00" for both parcels. The Agreement is not severable; the obligation to close is contingent on the completion of obligations of Paragraph 30 for <u>both</u> parcels, without a severance provision for closing on one or the other but not both lots.

    b. Paragraph 30 is invoked and closing initiated by notice by the SELLER as to both parcels.

The Mountain States Law Group®
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

    c.  The parties do not limit the outside date of closing, but merely imply that the actions will occur within a reasonable time, consistent with the Massachusetts Rule Against Perpetuities.

10. Paragraph 10 of the Agreement defines the concept of "reasonable time" by defining the time-frame for compliance under the Agreement to no more than 30 days in terms of extensions for compliance under the Agreement.

11. Plaintiffs, through counsel, provided notice of breach on January 14, 2020 and demanded the return of the deposit based upon the failure of the Defendant to comply with requirements of proof of Paragraph 30. In response, the Defendant refused to refund the deposit.  Under any interpretation of Paragraph 10, the time for performance by the Seller was extended to no later than mid-February 14, 2020.

12. In response to the demand for return of the deposit on January 14, 2020, the Seller did not respond by complying with the terms of Paragraph 30 under the time limitation of Paragraph 30, and did not request additional extensions for compliance under Paragraph 10, and did not provide to the Plaintiffs the proof required under Paragraph 30. The correspondence from January is attached as Exhibit B.

13. On June 5, 2020, the Defendant suddenly produced a plan for the six bedroom existing house, well-outside the time of performance, declaring that "this meets the seller's obligation under the P & S…" but not providing the second required proof.  See, Exhibit C.

14. Nonetheless, and clearly, the language of the June 5, 2020 date is at best ambiguous with regard to compliance with Paragraph 30, and is untimely, as arising 6 months after the

4


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

**Robert N. Meltzer**
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

termination of the transaction and the absence of a contract extension under paragraph 10 and fails to provide proof of compliance of the secondary parcel.

15. Specifically, the letter of June 5, 2020 is apparently unmatched by any documentation supporting compliance with Paragraph 30 for the vacant lot, which is a key element of "obligation under the P & S."

16. On June 16, 2020, counsel for Plaintiffs requested documents from the Seller to provide documentation demonstrating that the transaction had not terminated. See, Exhibit D.

17. As of the date of filing of this Complaint, the record of this transaction lacks documentation provided by the Seller to the Buyers confirming completion of his full contractual obligations under Paragraph 30 within a reasonable time, which is a breach of the Purchase and Sale Agreement.

18. As of this date, the Seller has not demonstrated compliance with its obligations for closing by production of transmittal letters to Buyers' Counsel under Paragraph 30 in a reasonable time.

19. As of this date, the Buyers still doesn't know if the Defendant ever complied with its primary obligations, and does not have documentation of compliance with Paragraph 30 as the secondary obligation of proof of compliance.

20. The time limit for performance has lapsed due to lack of reasonableness, as the Purchase and Sale Agreement is now over one year old and is stale.

21. In any event, the Purchase and Sale Agreement is void, as it violates the Massachusetts Rule Against Perpetuities, in that it fails to identify a date for the closing of a sale of real property within a time frame required by law, and generally creates an obligation of unvested interest in an indefinite duration.

5



**Robert N.** Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

22. The Plaintiffs have demanded the return of their security deposit of $95,000 on the grounds of prior breach and lapse.

23. The Defendant has refused to return the deposit.

24. Plaintiffs contends that not only was there a lack of compliance with Paragraph 30, but also that the Defendant has not acted with transparency in demonstrating compliance with Paragraph 30, which is an implied condition of Paragraph 30.

25. In fact, the Defendant has appeared deliberately obtuse in attempting to address whether he had complied.

26. The Defendant had the burden of proving that compliance occurred as had been covenanted.

## COUNT I
### BREACH OF CONTRACT
### EXPRESS AND IMPLIED OBLIGATIONS

27. The Plaintiff restates paragraphs 1-26 as if specifically stated.

28. The Seller breached the Contract either by failing to comply with the septic work and/or failing and refusing to cooperate in demonstrating compliance with Paragraph 30 so as to initiate closing under Paragraph 8.

29. The Seller not only breached the expressed covenants of obligation, but equally breached the implied covenants of good faith and fair dealing found in all contracts by refusing to prove to the buyers' satisfaction that the covenants had been completed.

30. As a result of the failure to perform express and implied covenants, the Seller breached the contract, and the Purchase and Sale Agreement lapsed and became void.

6



The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

31. Following the breach of the contract, the Seller had an affirmative duty to view the transaction as terminated and to return all deposits held.

32. The failure to direct the Escrow Agent to release deposits constitutes a further breach of contract.

33. As a result of these breaches, the Plaintiffs have been harmed.

## COUNT II
## CONVERSION

34. The Plaintiff restates paragraphs 1-33 as if fully realleged herein.

35. By refusing to authorize release of the deposit following the Seller's breach and by exercising continued dominion and control over the funds, and by refusing to return the funds so as to express a permanent desire to deprive the Plaintiffs of their property, the Seller has committed the tort of conversion.

36. As a result of this conduct, the Plaintiffs have been harmed.

## COUNT III
## REQUEST FOR DECLARATORY JUDGMENT

37. The Plaintiffs restate paragraphs 1-36 as if fully realleged herein.

38. The Plaintiffs request that the Court declare that the contract was void as violating the Rule Against Perpetuities, as the contract is an open-ended Agreement for the sale of property with no termination date.


The Mountain States Law Group
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

39. The Plaintiffs request that even if the Court finds that the Court is not void, that the Court declare that the contract was terminated by failure of the Seller to perform his obligations within a reasonable time, which is not a period of time in excess of one year.

40. The Plaintiffs request that even if the Court finds that the Agreement is not void, that the Court declare that, even if the Plaintiffs are in breach, the retention of the full deposit is void.

41. By retaining the deposit, the Seller has been claimed the right to keep a large deposit with no evidence of damages, under inequitable circumstances in which the Seller had it within his exclusive power to effectuate compliance, or to engage in action consistent with their implied covenants of good faith and fair dealing in order to satisfy the Plaintiffs that the covenants had been fulfilled.

42. Massachusetts law protects Buyers from what is sometimes called a "forced default," which arises out of the contractual doctrine of mutual obligation, meaning that the Seller creates a circumstance in which the Seller has all of the obligations, and control over the Buyers' funds, and that the Buyers have no further obligation, but that the Seller can claim the right to retain funds based upon the Seller's own breach; Such contracts are void.

43. In effect, the Seller gained the advantage of forcing the Buyers to either risk the loss of a large deposit, or the risk of taking non-conforming, deficient property.

44. At trial, the Plaintiffs will demonstrate that real estate values are in a state of increase in Massachusetts.



Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

45. At trial, the Plaintiffs will demonstrate that deposits such as the deposit in this case are also increasing as a factor of rising real estate prices.

46. At trial, the Plaintiffs will prove that in the real estate market as it existed in June of 2020, the Seller faced no risk of harm in relation to the deposit if the Buyers opted not to proceed, even if the Seller was adjudicated to have performed his obligations under the Agreement. In short, the Seller faced little or no damage even if he was in the right and forced a default.

47. At trial, the Plaintiffs will that the practice of forcing conflicting and unacceptable choices on Buyers at the risk of the deposit as opposed to the risk of taking unacceptable property, constitutes conduct known as "deposit farming," whereby the Seller is unjustly enriched

by his own misconduct, even if in the legal right.

48. This issue increasingly is of concern in the Commonwealth as the size of deposits continues to escalate, balloon and diverge from actual damages.

49. As such, the deposit in this case has ceased to be lawful liquidated damages, and has become, in fact, punitive damages under <u>Shapiro v. Grinspoon</u>, 27 Mass. App.Ct. 596, 603 (1989), meaning that the clause pertaining to retention of deposits under ¶21 is unlawful as a matter of law. A copy of <u>Grinspoon</u> is appended for the Court's convenience.

50. As an unlawful clause, ¶21 should be declared severed from the Purchase and Sale Agreement.

51. If the Seller proves at trial that the Plaintiffs, not the Defendant, had breached, the Court should declare that the Seller must prove actual damages and may not retain the deposit


The Mountain States Law Group®
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

under the Purchase and Sales Agreement as a matter of law and may retain no more than provable damages sustained by them.

WHEREFORE, the Plaintiffs respectfully requests that:

1.  This Honorable Court enter judgment against the Seller on all counts, finding that he breached all implied and expressed contractual covenants;

2.  This Honorable Court find that the Seller is not entitled to retention of the deposit.

3.  This Honorable Court order the Escrow Agent to release the deposit to the Plaintiffs.

4.  Alternatively, if this Honorable Court finds that the Seller did not breach the contract, that the Honorable Court that ¶21 be declared to be void and illegal under Massachusetts law, and severable from the Purchase and Sale Agreement.

5.  Alternatively, if this Honorable Court finds that the Seller did not breach the Contract, but that a bona fide dispute existed due to failure of the Seller to communicate with the Plaintiffs in the contractually required manner, that the Seller be declared barred from retaining the deposit.

6.  Alternatively, that the Honorable Court find and declare that the Seller is limited to actual damages in no greater amount than that proven at trial.

7.  Alternatively, that the Honorable Court find and declare that the entire Purchase and Sale Agreement is void under the Massachusetts Rule Against Perpetuity, and that all deposits should be released and that

8.  This Honorable Court award any further judgment or damages deemed just and appropriate by this Court.

THE PLAINTIFFS DEMAND A JURY TRIAL ON ANY ISSUE SO TRIABLE



Robert N. Meltzer
*Attorney At Law*

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

Respectfully Submitted,

**The Plaintiffs,**

By their attorney,

_____
Robert N. Meltzer, BBO #564745
The Mountain States Law Group
Wheelhouse at the Bradford Mill
33 Bradford Street
Concord, MA 01742
Phone: (978) 254 6289
r.meltzer@mountainstateslawgroup.com

Dated: August 14, 2020

The Mountain States Law Group®
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com

# EXHIBIT A

From the Office of:

## PURCHASE AND SALE AGREEMENT
(hereinafter referred to as the "Agreement")

This 28TH day of June, 2019.,

| | | |
|---|---|---|
| 1. | PARTIES AND MAILING ADDRESSES | Stephen C. Pisini, as Trustee of the Henry Corey Revocable Insurance Trust dated 11/10/03 and as Trustee of the Patricia K. Corey Revocable Insurance Trust dated 11/10/03, (hereinafter referred to as the "SELLER") agrees to sell and James I. Cash and Clemmie L. Cash of 340 South Palm Ave., Apt. #143, Sarasota, FL 34236 or their nominee (hereinafter referred to as the "BUYER") (SELLER and BUYER sometimes hereinafter collectively referred to as the "Parties"), agrees to buy, upon the terms hereinafter set forth, the following described premises: |
| 2. | DESCRIPTION | Land and buildings known and numbered as 56.1 (4-56.1), 56 (#4-56) Temahigan Ave. & Lot #5 (#5-11) Beach St. Ext. Oak Bluffs, Massachusetts 02557 more particularly described in a deed recorded in Dukes County Registry of Deeds in Book _____ Page _____, (hereinafter referred to as the "Premises"). |
| 3. | BUILDINGS, STRUCTURES, IMPROVEMENTS, FIXTURES | Included in the sale as a part of said Premises are the buildings, structures, and improvements now thereon, and the fixtures belonging to the SELLER and used in connection therewith (all of which are wholly owned by SELLER and are neither leased nor rented) including, if any, all wall-to-wall carpeting, drapery rods, automatic garage door openers, venetian blinds, window shades, screens, screen doors, storm windows and doors, awnings, shutters, furnaces, heaters, heating equipment, stoves, ranges, oil and gas burners and fixtures appurtenant thereto, hot water heaters, plumbing and bathroom fixtures, garbage disposers, electric and other lighting fixtures, mantels, outside television antennas, fences, gates, trees, shrubs and, plants and, washer/dryer, refrigerators, air conditioning equipment, ventilators and dishwashers. |
| 4. | TITLE DEED | Said Premises are to be conveyed by a good and sufficient quitclaim deed running to the BUYER, or to the nominee designated by the BUYER by written notice to the SELLER at least seven (7) days before the deed is to be delivered as herein provided, and said deed shall convey a good and clear record and marketable title thereto, free from encumbrances, except<br>(a)   Provisions of existing building and zoning laws;<br>(b)   Existing rights and obligations in party walls which are not the subject of written agreement<br>(c)   Such taxes for the then current year as are not due and payable on the date of the delivery of such deed;<br>(d)   Any liens for municipal betterments assessed after the date of this Agreement;<br>(e)   Easements, restriction and reservations of record, if any, so long as the same do not prohibit or materially interfere with the current use of said Premises;<br>(f)   None |
| 5. | PLANS | If said deed refers to a plan necessary to be recorded therewith the SELLER shall deliver such plan with the deed in form adequate for recording or registration. |

*Scf, x'cc*
*6/28/19*
*1 of 11*

*JIC*
*6/27/19*
*1 of 11*

6.  REGISTERED    In addition to the foregoing, if the title to said Premises is registered, said deed shall be in
    TITLE         form sufficient to entitle the BUYER to a Certificate of Title of said Premises, and the
                  SELLER shall deliver with said deed all instruments, if any, necessary to enable the BUYER
                  to obtain such Certificate of Title.

7.  PURCHASE PRICE  The agreed to purchase price for said Premises is **One Million Eight Hundred Ninety-Seven
                    Thousand Five Hundred ($1,897,500.00)**, of which

    $    5,000.00          have been paid as a deposit to bind the Offer;
    $   90,000.00          have been paid as a deposit this day and
    $1,802,500.00          are to be paid at the time of the delivery and recording of the deed in
                           by bank attorney's conveyancing, IOLTA or client's/trust account
                           check(s), drawn on a Boston Clearing Bank and payable directly to
                           Seller without endorsement or wire transfer.

    $1,897,500.00          **TOTAL**

8.  TIME FOR         Such deed is to be delivered at 1:00 o'clock P.M. on the later of August 15, 2019 or within 10
    PERFORMANCE;     days of SELLER having completed installation of the new septic system with Board of Health
    DELIVERY OF      approval, at the Dukes County Registry of Deeds or at the office of counsel for BUYER, unless
    DEED             otherwise mutually agreed upon in writing.   It is agreed that time is of the essence of this
                     Agreement.

9.  POSSESSION       Full possession of said Premises, free from all tenants and occupants, is to be delivered at the time
    AND              of the delivery of the deed, said Premises to be then (a) in the same condition as they now are
    CONDITION OF     reasonable use and wear thereof excepted, and (b) not in violation of said building and zoning laws,
    PREMISES         and (c) in compliance with provisions of any instrument referred to in Paragraph Four (4) hereof.
                     The BUYER shall be entitled to inspect said Premises prior to the delivery of the deed in order to
                     determine whether the condition thereof complies with the terms of this Agreement.

10. EXTENSION TO     If the SELLER shall be unable to give good title, or to make conveyance, or to deliver possession
    PERFECT TITLE    of the Premises, all as herein stipulated, or if at the time of the delivery of the deed the Premises
    OR MAKE          do not conform with the provisions hereof, then the SELLER shall use reasonable efforts to remove
    PREMISES         any defects in title, or to deliver possession as provided herein, or to make the said Premises
    CONFORM          conform to the provisions hereof, as the case may be, in which event the SELLER shall give written
                     notice thereof to the BUYER at or before the time for performance hereunder, and thereupon the
                     time for performance hereof shall be extended for a period of thirty days.  For purposes of this
                     Agreement, "reasonable efforts" shall be defined as not more than $9,000.00, exclusive of
                     mortgages and municipal liens.

11. FAILURE TO       If at the expiration of the extended time the SELLER shall have failed so to remove any defects in
    PERFECT TITLE    title, deliver possession, or make the Premises conform, as the case may be, all as herein agreed,
    OR MAKE          or if at any time during the period of this Agreement or any extension thereof, the holder of a
    PREMISES         mortgage on said Premises shall refuse to permit the insurance proceeds, if any, to be used for such
    CONFORM, etc.    purposes, then any payments made under this Agreement shall be forthwith refunded and all other
                     obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to
                     the Parties hereto.

*Sel, rice*
*6/28/19*
*2 of 11*

*JdC*
*6/27/19*
*2 of 11*

12. **BUYER's ELECTION TO ACCEPT TITLE**
    The BUYER shall have the election, at either the original or any extended time for performance, to accept such title as the SELLER can deliver to the said Premises in their then condition and to pay therefore the purchase price without deduction, in which case the SELLER shall convey such title, except that in the event of such conveyance in accord with the provisions of this Paragraph, if the said Premises shall have been damaged by fire, vandalism or other casualty, or in the event of a taking of all or a part of the Premises by eminent domain, then the SELLER shall, unless the SELLER has previously restored the premises to their former condition, either

    (a) pay over or assign to the BUYER, on delivery of the deed, all amounts recovered or recoverable on account of such insurance, less any amounts reasonably expended by the SELLER for any partial restoration, or

    (b) if a holder of a mortgage on said premises shall not permit the insurance proceeds or a part thereof to be used to restore the said premises to their former condition or to be so paid over or assigned, give to the BUYER a credit against the purchase price, on delivery of the deed, equal to said amounts so recovered or recoverable and retained by the holder of the said mortgage less any amounts reasonably expended by the SELLER for any partial restoration.

13. **ACCEPTANCE OF DEED**
    The acceptance and recording of a deed by the BUYER or his nominee as the case may be, shall be deemed to be a full performance and discharge of every agreement and obligation herein contained or expressed, except such as are, by the terms hereof, to be performed after the delivery of said deed.

14. **USE OF MONEY TO CLEAR TITLE**
    To enable the SELLER to make conveyance as herein provided, the SELLER may, at the time of delivery of the deed, use the purchase money or any portion thereof to clear the title of any or all encumbrances or interests, provided that all instruments so procured are recorded simultaneously with the delivery of the deed, or with respect to discharges of institutional mortgages being paid off at closing, if any, such discharges can be recorded following closing in accordance with local and customary conveyancing practices.

15. **INSURANCE**
    Until the delivery of the deed, the SELLER shall maintain insurance on said Premises as follows:

    *Type of Insurance*                                    *Amount of Coverage*

    (a) Fire and Extended Coverage          *$  as presently insured
    Risk of loss to remain with SELLER until the deed is filed with the Dukes Land Court

16. **ADJUSTMENTS**
    Real estate taxes for the fiscal year in which the closing takes place, shall be apportioned and fuel value, if applicable, shall be adjusted, as of the day of performance of this Agreement and the net amount thereof shall be added to or deducted from, as the case may be, the purchase price payable by the BUYER at the time of delivery of the deed.

17. **ADJUSTMENT OF UNASSESSED AND ABATED TAXES**
    If the amount of said taxes is not known at the time of the delivery of the deed, they shall be apportioned on the basis of the taxes assessed for the preceding fiscal year, with a reapportionment as soon as the new tax rate and valuation can be ascertained; and, if the taxes which are to be apportioned shall thereafter be reduced by abatement, the amount of such abatement, less the reasonable cost of obtaining the same, shall be apportioned between the Parties, provided that neither party shall be obligated to institute or prosecute proceedings for an abatement unless herein otherwise agreed.

3

18. **BROKER's FEE**    The parties acknowledge that a fee for professional services of five (5.00%) percent of the purchase price is due from the SELLER to Towne & Country Realty, but only if, as and when the full price is paid and the deed is recorded and not otherwise, and regardless of the reason for failing to close hereunder.

19. **BROKER(S) WARRANTY**    The Broker named herein, Towne & Country Realty warrants that it is duly licensed by the Commonwealth of Massachusetts.

20. **DEPOSIT**    All deposits made hereunder shall be held in escrow in a non-interest bearing account by Towne & Country Realty subject to the terms of this Agreement and shall be duly accounted for at the time for performance of this Agreement. In the event of any disagreement between the Parties, the escrow agent shall retain all deposits made under this Agreement pending written instructions mutually given by the SELLER and the BUYER or a court of competent jurisdiction.

21. **BUYER's DEFAULT; DAMAGES**    If the BUYER shall fail to fulfill the BUYER's agreements herein, all deposits made hereunder by the Buyer shall be retained by the SELLER as liquidated damages and this shall be SELLER's sole remedy at law and in equity.

22. **RELEASE BY HUSBAND OR WIFE**    INTENTIONALLY DELETED

23. **BROKER AS PARTY**    The Broker(s) named herein join(s) in this agreement and become(s) a party hereto, insofar as any provisions of this agreement expressly apply to the Broker(s) and to any amendments or modifications of such provisions to which the Broker(s) agree(s) in writing.

24. **LIABILITY OF TRUSTEE, SHAREHOLDER, BENEFICIARY, etc.**    If the SELLER or BUYER executes this Agreement in a representative or fiduciary capacity, only the principal or the estate represented shall be bound, and neither the SELLER or BUYER so executing, nor any shareholder or beneficiary of any trust, shall be personally liable for any obligation, express or implied, hereunder.

25. **WARRANTIES AND REPRESENTATIONS**    The BUYER acknowledges that the BUYER has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth or incorporated in this Agreement or previously made in writing, except for the following additional warranties and representations, if any, made by either the SELLER or the Broker(s):  None.  The BUYER has had an opportunity to have inspections of the premises performed, is satisfied with same or has waived same, and shall purchase the premises in "as is" condition.

26. **MORTGAGE CONTINGENCY CLAUSE**    INTENTIONALLY DELETED

27. **CONSTRUCTION OF AGREEMENT**    This Agreement, executed in multiple counterparts or by scanned, faxed or electronic signature, is to be construed as a Massachusetts contract, is to take effect as a sealed instrument, sets forth the entire contract between the Parties, is binding upon and enures to the benefit of the Parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be cancelled, modified or amended only by a written instrument executed by both the SELLER and the BUYER or their respective counsels. The Parties may rely upon facsimile copies of such written

4

instruments. If two or more persons are named herein as BUYER and/or SELLER, their respective obligations hereunder shall be joint and several. The captions and marginal notes are used only as a matter of convenience and are not to be considered a part of this Agreement or to be used in determining the intent of the Parties to it.

28. LEAD PAINT LAW

The Parties acknowledge that, under Massachusetts law, whenever a child or children under six years of age resides in any residential premises in which any paint, plaster or other accessible material contains dangerous levels of lead, the owner of said premises must remove or cover said paint, plaster or other material so as to make it inaccessible to children under six years of age.

29. SMOKE DETECTORS AND CARBON MONOXIDE

The BUYER shall, at the time of delivery of the deed, produce a certificate, issued by the local fire department of the city or town in which said Premises are located stating that said Premises have been equipped with approved smoke detectors and carbon monoxide detectors and are in compliance with Massachusetts General Laws, Chapter 148, Sections 26E and 26F½ and in conformity with any applicable law.

30. ADDITIONAL TERMS

SELLER shall cause a new septic system to be designed, approved and installed at the lot which currently has a residence. The closing shall take place within 10 days of notification to counsel for BUYER that the system has been installed and approved by the Board of Health. SELLER shall cause the system to be designed for and installed as a 6 bedroom septic system. SELLER shall cause the billing for such installation to be separated insofar as the BUYER will be responsible and will reimburse SELLER for the incremental difference in cost for installation of the 6, as opposed to a 3 bedroom system. SELLER shall also provide documentation that the septic system at the vacant lot has been approved for 3 bedrooms.

FOR RESIDENTIAL PROPERTY CONSTRUCTED PRIOR TO 1978, BUYER MUST ALL HAVE SIGNED LEAD PAINT "PROPERTY TRANSFER NOTIFICATION CERTIFICATION".

NOTICE:   THIS IS A LEGAL DOCUMENT THAT CREATES BINDING OBLIGATIONS. IF NOT UNDERSTOOD, CONSULT AN ATTORNEY.

SELLER: Stephen C. Pisini,
Trustee of the
Henry Corey Revocable Insurance
Trust dated 11/10/03

SELLER: Stephen C. Pisini
Trustee of the
Patricia K. Corey Revocable Insurance
Trust dated 11/10/03

BUYER: James I. Cash

BUYER: Clemmie L. Cash

5

## EXTENSION OF TIME FOR PERFORMANCE

Date _____

The time for the performance of the foregoing agreement is extended until _____ o'clock _____ M. on the

_____ day of _____ 20 ___, time still being of the essence of this agreement as extended.  In all other respects, this

agreement is hereby ratified and confirmed.

This extension, executed in multiple counterparts, is intended to take effect as a sealed instrument.

6

Rider to Purchase and Sale Agreement

56.1 (4-56.1), 56 (#4-56) Temahigan Ave. & Lot #5 (#5-11) Beach St. Ext. Oak Bluffs, Massachusetts

31.    All notices required or to be given hereunder shall be in writing and deemed duly given when placed in the US Mail, postage prepaid, or sent via facsimile, when sent via FedEx, DHL, UPS or such other similar commercial overnight delivery courier/carrier (with electronic tracking and delivery confirmation), or sent via e-mail, or hand delivered addressed as follows:

If to BUYER:  David K. Kertzman, Esq., Kertzman & Weil, LLP, 40 Grove Street, Suite 280, Wellesley, MA  02482, 781-237-8701, Fax 781-237-6361, david@keretzmanweil.com

If to SELLER:    Stephen C. Pisini, Esq., Stephen C. Pisini, P.C.,
730 Main Street, Suite 2B, Millis, MA 02054
(508) 478-9700,  Fax: (508) 478-9872, Pisinis@molloylaw.com

or to such other address or addresses as may from time to time be designated by either party by written notice to the other.

32.    From and after the date of this Agreement, SELLER agrees to permit BUYER and its designees, including but not limited to prospective mortgage lenders (and their agents), contractors, architects and insurance agents, reasonable access, at reasonable times, to the said Premises for the purpose of making measurements, inspections, and the like.  Said right of access shall be exercised only in the presence of SELLER, or the Broker(s) named herein, and only after reasonable prior notice, either written or oral, to the SELLER.  In any event, it being agreed that Twenty-Four (24) hours in advance shall be deemed to be "reasonable prior notice" pursuant to this Paragraph. BUYER hereby indemnifies and holds SELLER harmless for any loss, claims, damages, costs or liability proximately caused by the negligence of BUYER or BUYER'S agents or invitees under this provision.

33.    BUYER warrants and represents to SELLER and SELLER represents and warrants to BUYER that neither has dealt with any broker or other person entitled to a broker's commission in connection with the negotiation or execution of this Agreement or the consummation of the transaction contemplated hereby except the Broker(s) listed herein and each agrees to hold the other harmless and indemnify the other against all damages, claims, losses and liabilities, including legal fees, incurred by the other, arising out of or resulting from the failure of its representation and warranty.  The provisions of this Paragraph shall survive delivery of the Deed hereunder.

34.    By executing this Agreement, the BUYER and SELLER hereby grant to their attorneys the actual authority to bind them for the sole limited purpose of allowing them to cancel, grant extensions, modify or amend this Agreement in writing, and the BUYER and SELLER shall be able to rely upon the signatures of said attorneys as binding unless they have actual knowledge that the principals have

disclaimed the authority granted herein to bind them. Further, for purposes of this Agreement, email transmissions and/or facsimile signatures on such written instruments shall be binding.

35.     Any title matter or practice matter arising under or relating to this Agreement which is the subject of a title or practice standard of the Massachusetts Real Estate Bar Association ("REBA") shall be governed by said title or practice standard to the extent applicable, and to the extent such title standard or practice standard does not contradict any expressed term or condition of this Agreement.

36.     Without limitation of any other provisions of this Agreement, said Premises shall not be considered to be in compliance with the provisions of this Agreement with respect to title unless:

(a)     All buildings, structures and improvements at the Premises, including, but not limited to, any driveway(s), garage(s), fence(s), shed(s), septic systems and wells and all other improvements intended to be included in the sale and all means of access to and egress from the Premises shall be wholly within the lot lines of the Premises and shall not encroach upon, over or , under any property not within such lot lines or property of any other person or entity, unless by way of a recorded easement;

(b)     No building, structure, improvement, including, but not limited to, any driveway(s), garage(s), fence(s), shed(s), way(s), septic systems or property of any kind encroaches upon, over or under the Premises from other premises, unless by way of a recorded easement;

(c)     Title to the Premises is insurable, for the benefit of the BUYER, by a title insurance company reasonably acceptable to BUYER, in a fee owner's policy of title insurance, at normal premium rates for such policies, subject only to the exceptions permitted under Paragraph Four (4) of this Agreement and those printed exceptions to title normally included in the "jacket" to such form or policy. It is agreed that in the event of a title matter for which a title insurance company is willing to issue a so-called "clean" policy or provide "affirmative coverage" over a known defect or problem, BUYER may elect to accept same but shall    not be required to do so, and shall have the right, at the option of their counsel, to deem title to the Premises unacceptable or unmarketable and to terminate this Agreement receiving a return of all deposits forthwith.

(d)     The Premises abut and have vehicular and pedestrian access to a public way, duly laid out or accepted as such by the town or city in which the Premises are located and the Premises and all buildings and improvements thereon have unrestricted and unencumbered vehicular and pedestrian access to such public way;

(e)     Certificates of Compliance for any lot specific outstanding Orders of Conditions pertaining to wetlands have been recorded or delivered for recording at closing;

(f)     BUYER's survey or mortgage plot plan indicates that no structure or improvements situated upon the Premises violates said zoning ordinances or by-laws or provisions of M.G.L. chapter 40A, unless such structures or improvements are validly nonconforming in accordance with said ordinances, by-laws and general laws;

(g)     All existing utilities servicing the Premises are provided directly from a public street or private way, or via validly recorded easement with perpetual right of use.

37. The SELLER represents to the best of SELLER's actual knowledge and belief but without making an independent inspection, investigation or inquiry, that the following information is true and accurate as of the date of this Agreement and shall remain true and accurate as of the date of Closing:

(a)    there are no underground oil storage tanks or related apparatus (including piping) for fuel oil, waste oil or other petroleum products located on or under the Premises and the SELLER has not removed such tanks or apparatus from the Premises and has no knowledge of any releases into the soil from any such tanks or apparatus;

(b)    other than reasonable quantities of normal household products, there has been no release of any toxic or hazardous substances (as same is contemplated by MGL Ch 21E) and no such toxic or hazardous substances have been used, released, generated, stored, treated, disposed of, or otherwise deposited, in, on, about or from the Premises, including without limitation oil, asbestos and/or chlordane;

(c)    SELLER has complete and unencumbered ownership of all fixtures, fittings and equipment located in the Premises;

(d)    there is no pending bankruptcy, mortgage foreclosure, or other proceeding which might in any material way impact adversely on SELLER's ability to perform under this Agreement.  In the event that SELLER files for bankruptcy, or if involuntary proceedings are instituted against SELLER, BUYER may, at BUYER's election, terminate this Agreement by written notice to the SELLER whereupon any payments made under this Agreement shall be forthwith refunded to the BUYER and all other obligations of the Parties hereto shall cease and this Agreement shall be void without recourse to the Parties hereto;

(e)    SELLER is not aware of any suits, actions, orders, decrees, claims, writs, injunctions or proceedings pending or threatened against the SELLER or affecting all or any part of the Premises or the operation thereof before any court or administrative agency or officer which, if adversely determined, would have material adverse effect upon the Premises;

(f)    as of the date hereof, the SELLER has received no written notice from any municipal, county, state or federal agency asserting or alleging that the Premises are or may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters or enforcement proceedings, which representation shall be deemed to have been repeated at the time and by virtue of delivery of the deed;

(g)    as of the date hereof, the SELLER has no knowledge that the Premises are or may be in violation of the provisions of any municipal, county, state or federal codes, ordinances, statutes or regulations relating to zoning, building, environmental or health matters, which representation shall be deemed to have been repeated at the time and by virtue of delivery of the deed;

(h)    SELLER represents that SELLER has no knowledge of any municipal betterments affecting the Premises approved, pending, proposed or contemplated by the Town of Oak Bluffs, MA which is likely to result in an assessment against the Premises.

38.  SELLER shall execute and deliver simultaneously with the delivery of the deed, and when required shall on oath swear to the truth of the matters therein set forth, such documents as may

reasonably be required by BUYER's counsel, or the title insurance company insuring the Premises for BUYER, including without limiting the generality of the foregoing, certifications, or affidavits with respect to: (a) that there are no persons or parties in possession of the Premises; (b) that there are no facts or conditions which may give rise to mechanic's or materialmen's liens; (c) an affidavit pursuant to Section 1445 of the Internal Revenue Code; and (d) 1099 reporting form.

39. Between the date of the signing of this Agreement and the Closing, SELLER shall maintain and/or service the Premises and its appurtenances at the same level of effort and expense as the SELLER has maintained and/or serviced the Premises for the SELLER's own account prior to the date of this Agreement, including maintaining the grounds and lawn, if any, and without any deferral of maintenance or repairs.

40. SELLER has not been turned town for casualty insurance or required to pay increased premiums due to excessive or repeat claims or for any other reason attributable to the Premises, and there is no historical state of facts attributable to the Premises that are the subject of this Agreement that would render BUYER unable to obtain property and casualty insurance at regular premium rates.

41. Note: This paragraph only applies if BUYER elects to procure an institutional purchase money mortgage that is subject to CFPB regulations.

Consumers obtaining mortgage loans in order to purchase a home have typically been entitled to receive two different disclosure forms. The first, required by the Truth in Lending Act, provided financial information regarding the terms of the loan while the second, required by the Real Estate Settlement Procedures Act and commonly referred to as the "Settlement Statement" or "HUD", itemized various transaction costs and adjustments like prorated real estate taxes, utility charges, recording fees and the like. Pursuant to the so-called "Integrated Disclosure Rule" issued by the Federal Consumer Financial Protection Bureau, these forms have been consolidated into a single Closing Disclosure which is now required in the case of any loan applied for on or after October 3, 2015. The Closing Disclosure must be received by the borrower three business days prior to the date of Closing, when the deed is delivered and the balance of the purchase price is paid. In order to facilitate compliance with this Rule, the parties agree as follows:

1. The BUYER shall obtain and promptly disclose to the SELLER the name of the attorney engaged to represent the BUYER'S mortgage lender ("Lender's Counsel ") and shall request that title documents be ordered by Lender's Counsel immediately.

2. The SELLER and the BUYER shall furnish to Lender's Counsel as soon as possible and in any event at least ten days in advance of the scheduled Closing all data known or available to or otherwise obtainable by such party and required in order to calculate the Adjustments provided for in the applicable clause of the Purchase and Sale Agreement or requested by Lender's Counsel in order to prepare the Closing Disclosure. The required information can include intended use by BUYER of a Power of Attorney at closing, final water and sewer readings or the amount of paid final municipal utility bills, oil or propane adjustments, personal property purchase amounts, SELLER mortgage loan information, and name, business address, license number and office license number (if applicable) for all real estate brokers for BUYER and SELLER and the full brokerage commission and split, if applicable.

3.      In the event there are "late" adjustments such as compensation for matters determined at the final walk through prior to closing, the Integrated Disclosure Rule mandates that all such adjustments be shown on the final Closing Disclosure, which is typically prepared and finalized by the Lender.  Therefore, at the request of Lender's Counsel, the Closing may be extended for a matter of hours to up to three business days as may be necessary in order to assure full compliance with the Integrated Disclosure Rule.

4.      BUYERS shall finalize their interest rate and other critical terms of their mortgage loan at least ten days prior to Closing as certain late changes can mandate extension of the Closing Date.

5.      The parties further agree to cooperate in making any Lender-required corrections to Integrated Disclosure Rule.  All time periods for any extensions shall be at the sole determination of the Lender.

6.      To the extent any terms of this Paragraph 41 conflict with any provisions of the remainder of this Agreement, the terms of this Paragraph 41 shall control.

7.      Neither party shall have any claim against the other for any loss or damage resulting from the extension of the Closing pursuant to this paragraph 41 unless such extension is made necessary by a BUYER or SELLER'S breach of the above-referenced regulations.  A requisite extension of the closing time or date to comply with the above-referenced regulations, including requisite delivery and review periods, not to exceed 3 business days, shall not jeopardize BUYER'S deposit.

Initials:

# EXHIBIT B

I realize this has taken time. That's why I initially accepted the offer with a firm closing date and holdback of funds for the post-closing installation of the septic. It was at your request during the negotiations that we agreed in the P & S to do the installation first. There was no mention of additional work to the smaller lot.

As I've mentioned in my replies to your earlier emails, our obligation was to install the 6-bedroom upgrade to the existing house, but you have unilaterally pulled out of the deal and called it off over how the permit was applied for, as "an existing 5-bedroom house with a future 1 bedroom addition".

We maintain this is irrelevant as the system will in fact accommodate 6 bedrooms. I am having the engineer submit a plan for a proposed 6-bedroom dwelling to establish that a new 6-bedroom construction will be allowed. In reliance on our mutual promises, we've incurred significant costs in the testing, design and construction for a system larger than we were required to do, so I am not able to authorize the return of your deposit at this time.

-Steve

*Stephen C. Pisini, P.C.*
Pisinis@molloylaw.com

Pisini Law Group
730 Main Street, Suite 2B
Millis, MA  02054
Tel. (508) 478-9700
Fax.(508) 478-9872

In accordance with IRS Circular 230, we advise you that any tax advice in this email (including attachments) is not written or intended to be used, and cannot be used, by any recipient for the avoidance of penalties under federal tax laws, or for promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return email or by calling 1-508-478-9700.

---

**From:** David Kertzman [mailto:david@kertzmanweil.com]
**Sent:** Tuesday, January 14, 2020 11:57 AM
**To:** Steve Pisini
**Cc:** Cash, James
**Subject:** RE: Corey House, 56 Temahigan Avenue, Oak Bluffs
**Importance:** High

Hi Steve

It's been 6.5 months since the P&S was signed and 5 months since the closing date.

Per prior emails, we are not satisfied with the plan and as of our last discussion nothing had been done with the septic work on the smaller lot.

Time is if the essence, as you know. And once again, repeating from our last communication, Dr. Cash is no longer willing to proceed.

Please consider this a demand for return of the deposit, to be sent to my office forthwith.

If this deposit is not returned, we will be referring this matter to a litigator.

David

David K. Kertzman, Esquire
Kertzman & Weil, LLP
40 Grove Street
Suite 280
Wellesley, MA 02482
Tel: 781-237-8701
Fax: 781-237-6361
Cell: 781-962-5763

www.kertzmanweil.com

WARNING - WIRE FRAUD: Due to the recent increase in wire fraud, all wiring instructions sent by this office will be in the form of a SECURE EMAIL ONLY.  If you did not receive instructions via a SECURE EMAIL, do not initiate any transfers. In addition, and prior to transferring funds, you should contact our office to verbally confirm wiring instructions. We are not responsible for any wires you may send to an incorrect bank account.

This email message or its attachments, if any, must not be forwarded unless it is done by the addressee of the sender at Kertzman & Weil, LLP, and then only with discretion. This material may be attorney-client privileged and confidential. Any downloading, disclosure, photocopying, distribution to or use by anyone other than the party to whom it is addressed is prohibited. In the event that this material is sent to an incorrect address, please notify the sender by calling us at (781) 237-8701, or by return email, and delete the material in its entirety from your electronic media. Thank you.

## David Kertzman

| | |
|---|---|
| **From:** | David Kertzman |
| **Sent:** | Tuesday, January 14, 2020 4:49 PM |
| **To:** | Steve Pisini |
| **Cc:** | Cash, James |
| **Subject:** | RE: Corey House, 56 Temahigan Avenue, Oak Bluffs |

Steve

The P&S also required documentation that the septic system at the vacant parcel has been approved for 3 bedrooms.  That was never provided.

We are willing to pay for the additional costs for design of the larger system.

David

David K. Kertzman, Esquire
Kertzman & Weil, LLP
40 Grove Street
Suite 280
Wellesley, MA 02482
Tel: 781-237-8701
Fax: 781-237-6361
Cell: 781-962-5763

www.kertzmanweil.com

WARNING - WIRE FRAUD: Due to the recent increase in wire fraud, all wiring instructions sent by this office will be in the form of a SECURE EMAIL ONLY.  If you did not receive instructions via a SECURE EMAIL, do not initiate any transfers. In addition, and prior to transferring funds, you should contact our office to verbally confirm wiring instructions. We are not responsible for any wires you may send to an incorrect bank account.

This email message or its attachments, if any, must not be forwarded unless it is done by the addressee of the sender at Kertzman & Weil, LLP, and then only with discretion. This material may be attorney-client privileged and confidential. Any downloading, disclosure, photocopying, distribution to or use by anyone other than the party to whom it is addressed is prohibited. In the event that this material is sent to an incorrect address, please notify the sender by calling us at (781) 237-8701, or by return email, and delete the material in its entirety from your electronic media. Thank you.

**From:** Steve Pisini <pisinis@molloylaw.com>
**Sent:** Tuesday, January 14, 2020 3:47 PM
**To:** David Kertzman <david@kertzmanweil.com>
**Subject:** RE: Corey House, 56 Temahigan Avenue, Oak Bluffs

Hi Dave,

1

# EXHIBIT C

**From:** Steve Pisini <pisinis@molloylaw.com>
**Date:** June 5, 2020 at 4:53:31 PM EDT
**To:** David Kertzman <david@kertzmanweil.com>
**Subject: FW:  Corey septic install - AP 4-154**


Dear Dave,

I hope you are well.
I am attaching a copy of the revised plan which has been approved for the construction of a 6-bedroom dwelling at 56 Temahigan Avenue, Oak Bluffs. Mass.
This meets the seller's obligation under the P & S.


You have previously stated that your client will not perform as agreed. Therefore, I will be instructing the broker to release the deposit to the seller.
If you client does intend to perform, please so advise so that the closing can be scheduled within the next 10 days.
Thank you.
-Steve


*Stephen C. Pisini, P.C.*
Pisinis@molloylaw.com

Pisini Law Group
730 Main Street, Suite 2B
Millis, MA  02054
Tel. (508) 478-9700
Fax.(508) 478-9872

In accordance with IRS Circular 230, we advise you that any tax advice in this email (including attachments) is not written or intended to be used, and cannot be used, by any recipient for the avoidance of penalties under federal tax laws, or for promoting, marketing or recommending to another party any tax-related matters addressed herein.

This message, along with any attachments, may be confidential and legally privileged. If you are not the designated recipient of this message, please destroy it and notify the sender of the error by return email or by calling 1-508-478-9700.

# EXHIBIT D

Robert N. Meltzer
*Attorney At Law*

June 16, 2020

Pisini Law Group
730 Main Street, Suite 2B
Millis, MA 02054
Attn: Stephen C. Pisini, Esq.

Re:   James and Clemmie Cash
      Temahigan Ave/Beach St Ext, Oak Bluffs
      Purchase and Sale Agreement –June 28, 2019

Dear Steve:

Please be advised that this office represents James and Clemmie Cash with regard to the above-captioned transaction. My clients have asked me to review the Purchase and Sale Agreement, and attendant contract documents in light of your most recent emails to Attorney David Kertzman.

It is evident that the Purchase and Sale Agreement lapsed due to lack of extension, that my clients are no longer bound by the Purchase and Sale Agreement, and that the deposit of $95,000 is being withheld from them without legal color of right. If you have any documentation which you contend is a valid extension of the agreement, or a willingness by my clients to be bound to this transaction after this length of time, I would appreciate it if you forward the document to me. Such a document, consistent with Paragraph 27 of the Purchase and Sale Agreement, would have to be signed by my clients, demonstrating an intent to be bound to this transaction for eternity; I have seen no such document. I would note, parenthetically, that the contention that such a clause exists would, in any event, be barred by the Massachusetts Rule Against Perpetuities.

This transaction is over, and it is time for the deposit to be returned. Kindly do so forthwith.

Thank you.

Very truly yours,

Robert N. Meltzer

Cc:    client

33 Bradford Street
Concord, MA 01742
(978) 254-6289
robmeltzer@aol.com

The Mountain States Law Group®
COLORADO • MASSACHUSETTS • UTAH
IDAHO • WYOMING • WISCONSIN
info@mountainstateslawgroup.com



# Shapiro v. Grinspoon

27 Mass. App. Ct. 596 (1989)

541 N.E.2d 359

KAREN LEE SHAPIRO, administratrix,[1] & another[2] vs. HAROLD GRINSPOON and others.[3]

No. 88-P-688.

**Appeals Court of Massachusetts, Hampden.**

March 13, 1989.

July 21, 1989.

Present: BROWN, DREBEN, & WARNER, JJ.

*597 Edgar L. Kelley for the plaintiffs.

Frederick S. Pillsbury for the defendants.

WARNER, J.

This appeal concerns the plaintiffs'[4] attempt to secure the return of a deposit made by them in an unsuccessful commercial real estate transaction. The questions presented are whether the plaintiffs had the right to terminate a purchase and sale agreement and, if not, whether a liquidated damages clause in the contract is enforceable. After a bench trial in the Superior Court, a judge ruled against the plaintiffs on both issues.

We draw the essential facts, which are not challenged on appeal,[5] from the judge's memorandum of decision. In the late summer of 1985, the parties began negotiations for the purchase by the plaintiffs of an apartment complex in Agawam owned by The Regency Park. The plaintiffs were made aware that Metropolitan Life Insurance Company

(Metropolitan) held a $6,500,000 mortgage on the property, which would mature on October 1, 1994, and which did not allow for prepayment until October 1, 1990. The defendants began discussions with Metropolitan about the amount of a prepayment penalty; the defendants offered $400,000, but it then appeared that Metropolitan would demand more. The plaintiffs were kept informed of the discussions with Metropolitan but not of the details.

On October 30, 1985, the parties executed a letter of intent which detailed the essential terms of the transaction, including those with respect to the prepayment of the Metropolitan mortgage, which were later to be included in a purchase and sale agreement. The plaintiffs paid in escrow a deposit of $50,000.

*598 On December 16, 1985, representatives of Metropolitan met with the defendants and rejected the prepayment offer of $400,000. Agreement was reached on a figure of $625,000, subject to approval by higher authorities of Metropolitan.

The purchase and sale agreement was executed by the parties on December 23, 1985, and provided for a purchase price of $16,500,000, a closing date of February 14, 1986, and the plaintiffs' right to extend that date for a period of 45 days, on 14 days' notice and a nonrefundable payment of $100,000. The plaintiffs deposited in escrow an additional $450,000. On the matter of the prepayment of the Metropolitan mortgage, the agreement provided in relevant part:

9. Seller's Present Mortgage. Buyer acknowledges that Seller's present mortgagee, Metropolitan Life Insurance Company ("Metropolitan"), has imposed upon Seller a prohibition against the early payment of the present mortgage. Both Seller and Buyer agree that they shall pay a maximum of Two Hundred Thousand ($200,000) Dollars each to Metropolitan in order to obtain a discharge of the mortgage on payment of the outstanding principal and accrued interest by Seller at the time of the Closing. In the event that Metropolitan shall refuse to accept such payment, or agree to a payoff of its mortgage with a maximum prepayment penalty of $400,000 or less, then either party shall have the right to terminate this Agreement in which event the deposits hereunder and all interest accrued thereon ... shall be refunded to the Buyer and the parties shall have no further obligations to each other. ... In the event that Metropolitan shall require a payment less than $400,000, each party shall be liable for one-half (1/2) thereof. At its option Seller may elect to increase the purchase price to be paid by Buyer by the amount of the prepayment penalty otherwise payable by Buyer hereunder, in which event Buyer shall not also be obligated to pay such penalty. (Emphasis supplied.)

*599 Although precision of date is lacking (because the evidence did not give foundation), the judge found that, when the purchase and sale agreement was executed, the defendants had not informed the plaintiffs that the $400,000 prepayment penalty was unacceptable to Metropolitan. The plaintiffs had not been told that an agreement on the figure of $625,000 had been made, subject to final approval by Metropolitan. In early January of 1986, the defendants told the plaintiff Shapiro that the prepayment penalty would likely be $625,000 and requested that the plaintiffs consider paying one-half of that amount. There followed during the next two to three weeks further discussions between the defendants and Shapiro about the prepayment. During this time the plaintiffs neither rejected nor accepted the defendants' request to share equally in the payment of $625,000 to Metropolitan; "Shapiro skirted the issue."

On January 28, 1986, Metropolitan sent a letter to the defendants approving the $625,000 figure. The plaintiffs were informed of the authorization on January 31, 1986. At the plaintiffs' request, the defendants, on February 4, 1986, sent to the plaintiffs copies of the Metropolitan letter and of the note and mortgage. In an accompanying letter to Shapiro, received on February 5 or 6, the defendants said: "Since the demand by Metropolitan exceeds the $400,000 provided in our contract and since your maximum obligation under the contract is $200,000, we have elected to assume the difference. However, we are still hopeful that you would be willing to share equally the excess of the Metropolitan request as was discussed with [an associate of Shapiro's] last week."

By letter of February 7, 1986, the plaintiffs' counsel wrote to the defendants that "my client does hereby elect to exercise his right under paragraph 9. of the Purchase and Sale Agreement to terminate said Purchase and Sale Agreement and does hereby request return of his deposit." In response, the defendants advised the plaintiffs that the closing would be held as scheduled on February 14, and that the deposit would not be returned.

*600 Shapiro then attempted to "revitalize" the proposed transaction, but the plaintiff Regan "wanted out";[6] Shapiro was unable to find another partner. On February 14, 1986, the defendants attended the scheduled closing and were ready, willing and able fully to perform their obligations under the purchase and sale agreement. The plaintiffs failed to appear.

The defendants shortly later entered into a new arrangement with another buyer, on terms which will be discussed below. A letter of intent was executed on March 26, 1986, a purchase and sale agreement was signed on April 26, 1986, and the transaction was consummated on June 26, 1986.

Shapiro v. Grinspoon :: 1989 :: Massachusetts Appeals Court Decision    https://law.justia.com/cases/massachusetts/court-of-appeals/1989/

In the meantime, Regan had obtained financing and in mid-April the plaintiffs informed the defendants that the plaintiffs were then ready to perform. The defendants later told the plaintiffs that the property was no longer available.

*The Plaintiffs' Attempted Termination of the Purchase and Sale Agreement.*

The judge correctly concluded that the plaintiffs' attempted termination of the purchase and sale agreement on the ground that Metropolitan called for payment of more than $400,000 as a prepayment penalty was ineffective. He reasoned that, while a literal reading supported the plaintiffs' position, the purpose of the termination provisions of paragraph 9 of the agreement was to ensure that neither of the parties would be obligated to pay in excess of $200,000 toward the prepayment. The aim of the contribution provision was not to limit the amount of money paid to Metropolitan regardless of the source of payment. The latter interpretation would, the judge said, conflict with common sense and the plain intent of the parties. The construction which the judge adopted, and which we approve, "`is the one which appears to be in accord with justice and common sense and the probable intention of the parties. It [interprets the Agreement] as a business transaction entered *601 into by practical men[[7]] to accomplish an honest and straightforward end.'" Keating v. Stadium Management Corp., 24 Mass. App. Ct. 246, 252 (1987), quoting from Clark v. State St. Trust Co., 270 Mass. 140, 153 (1930). See Shea v. Bay State Gas Co., 383 Mass. 218, 223 (1981). See also deFreitas v. Cote, 342 Mass. 474, 477 (1961); Bossi v. Whalen, 19 Mass. App. Ct. 966, 967 (1985); Tremouliaris v. Pina, 23 Mass. App. Ct. 722, 727 (1987). As the defendants assumed the obligation for the payment of the excess penalty, the plaintiffs' refusal to perform was inexcusable.

The plaintiffs contend that they were entitled to terminate the agreement because of the defendants' fraud and misrepresentation in the failure promptly to inform the plaintiffs of the increased prepayment penalty demand by Metropolitan. In an oblique argument, the plaintiffs say that the defendants' failure to disclose somehow affected the plaintiffs' option to extend the closing date for 45 days. It is enough to say that no theory of fraud or misrepresentation such as the plaintiffs argue was pleaded, and the judge's findings and conclusions make clear that no such issue was tried to him. The plaintiffs did not move that the judge amend the findings or make additional findings. See Mass.R.Civ.P. 52(b), 365 Mass. 817 (1974). We will not consider the question, as it was not adequately put before the Superior Court judge. See Bernard v. Cameron & Colby Co., 397 Mass. 320, 323 (1986); Gerber v. Ty-Data, Inc., 5 Mass. App. Ct. 898, 898-899 (1977); Matthews v. School Comm. of Bedford, 22 Mass. App. Ct. 374, 379 (1986). Cf. J.C. Hillary's v. Massachusetts Commn. Against Discrimination, ante 204, 205-206 (1989).

Moreover, there is no merit to the plaintiffs' claim. Paragraph 9 of the agreement unequivocally limits the plaintiffs' contribution to the prepayment penalty to $200,000. As the judge found, the defendants requested but did not demand an increased contribution and agreed to assume the entire increase. The plaintiffs' confused estoppel argument fails for the same reasons.

*602 The Liquidated Damages Provision.

The sale of the property was consummated on June 26, 1986. This transaction was not the same as the one contemplated with the plaintiffs. Included in the sale was a two family house valued at $100,000, and the buyer paid nothing directly toward the prepayment penalty.[8] The sale price was $17,100,000. The net difference between the sale price to the plaintiffs and that paid by the buyer was, therefore, $300,000.

Paragraph 12 of the purchase and sale agreement between the plaintiffs and defendants provided that, on default of the plaintiffs, "the deposits and accrued interest thereon shall be retained by [the defendants] and forfeited by [the plaintiffs] as liquidated damages in lieu of all other rights and remedies which [the defendants] may have against [the plaintiffs] at law or in equity...." Under this provision, the defendants laid claim to the $500,000 in deposits made by the plaintiffs and the accrued interest. The plaintiffs argue that, as the defendants suffered no actual loss but made a profit of $300,000 on the sale, the liquidated damages provision may not be enforced because it would result not in compensation to the defendants but in a penalty to the plaintiffs.

The judge ruled that the sum of $500,000 was a reasonable forecast, at the time the purchase and sale agreement was executed on December 23, 1985, of damages likely to flow from a breach by the plaintiffs. He considered the experience and sophistication of the parties, the percentage (3.3%) of the liquidated damage amount in relation to the purchase price, the training and competence of plaintiffs' counsel and the vicissitudes of the real estate market. The judge declined, however, to look at the amount of liquidated damages in the context of the subsequent sale.[9] This, he said, would be "improper hindsight or Monday morning quarterbacking."

*603 Case law development of principles regarding the enforceability of liquidated damages provisions has been marked with ambivalence as a result of efforts to reconcile concepts of contract damages as purely compensatory, recognition of reasonable and freely bargained for liquidated damage clauses, and the hoary rejection of any results smacking of penalty. See the discussion in Farnsworth, Contracts § 12.18 (1982); Giesecke v. Cullerton, 280 Ill. 510, 513 (1917) ("[N]o branch of the law is involved in more obscurity by

contradictory decisions").

The law of Massachusetts with respect to the enforceability of such clauses requires consideration at two points. "Where actual damages are difficult to ascertain and where the sum agreed upon by the parties at the time of the execution of the contract represents a reasonable estimate of the actual damages, such a contract will be enforced.... But where the actual damages are easily ascertainable and the stipulated sum is unreasonably and grossly disproportionate to the real damages from a breach, or is unconscionably excessive, the court will award the aggrieved party no more than his actual damages" (citations omitted). A-Z Servicecenter, Inc. v. Segall, 334 Mass. 672, 675 (1956). See Security Safety Corp. v. Kuznicki, 350 Mass. 157, 158 (1966); Kroeger v. Stop & Shop Cos., 13 Mass. App. Ct. 310, 321-322 (1982); Lynch v. Andrew, 20 Mass. App. Ct. 623, 627-628 (1985), and cases cited; Schrenko v. Regnante, ante 282, 285 (1989), and authorities cited. See also Begelfer v. Najarian, 381 Mass. 177, 186 (1980); Graves Equip, Inc. v. DeMatteo Constr. Co., 397 Mass. 110, 112-113 (1986). The judge was correct, for the reasons stated by him, in concluding that the amount of liquidated damages was a reasonable forecast, as of the time of execution of the contract, of damages which would result from the plaintiffs' breach.

In Schrenko v. Regnante, supra at 285-286, we discussed whether a later profitable sale should be considered in determining the reasonableness of a liquidated damages provision at the time of the required retrospective examination. We pointed out (at 286 n. 4) the conflicting authority on the issue but, because we ruled that the clause was not a true liquidated damages *604 provision, we reserved the question (at 286) for future resolution. But see Lynch v. Andrew, 20 Mass. App. Ct. at 628. We now hold that enforceability is not affected by a later profitable sale standing alone. The relevance, if any, of a later profitable sale is only to the value of the property at the time of breach. We think the disproportionateness and excessiveness of which our cases speak should be measured, as of the time of the breach, against the actual losses caused by the breach, that is, those uncompensated damages, as, for example, mortgage service costs, taxes, and legal and accounting expenses, which flow directly from a defaulting party's actions in connection with the transaction. The plaintiffs may show that, at the time of breach, the property could have been sold for a price higher than what the plaintiffs agreed to pay so as sufficiently to compensate the defendants for damages attributable to the breach. See Vines v. Orchard Hills, Inc., 181 Conn. 501, 513-514 (1980). See also Colonial At Lynnfield, Inc. v. Sloan, 870 F.2d 761, 764-767 (1st Cir.1989) (later profitable sale agreed to less than one month after breach and consummated two months thereafter). In that situation, the defendants would have suffered no loss. See Restatement (Second) of Contracts § 356 comment b and illustration 4. For this purpose, upon proper foundation evidence, the judge, in the exercise

of sound discretion, may admit evidence of the price in the subsequent sale on the question of fair market value at the time of breach.

The rule which we adopt is consistent with compensatory damages principles, gives continued recognition, as our cases allow, to the validity of fair and freely bargained for liquidated damages provisions, preserves the power of the court to grant equitable relief on retrospective consideration, and provides a fixed and final point at which to measure damages. The imposition of a rule that a subsequent profitable sale having no relevance to fair market value at the time of breach should be considered in determining the reasonableness of an otherwise valid liquidated damages provision might well be regarded as a penalty on the seller. Should not, after all, a seller receive the full benefit of a rising real estate market subsequent to breach? See Vines v. Orchard Hills, Inc., 181 Conn. at 513.

*605 The rule which we adopt is also consistent with Restatement (Second) of Contracts § 356. That section recognizes the validity of liquidated damages clauses and the principle that the fixing of an unreasonably large sum in relation to provable actual damages constitutes an unenforceable penalty. As we have noted, this corresponds with the holdings of our cases on the subject. While § 356 does not speak explicitly to the situation of a subsequent profitable sale, it addresses retrospective "no loss" circumstances. See comment b ("If, to take an extreme case, it is clear that no loss at all has occurred, a provision fixing a substantial sum as damages is unenforceable") and illustration 4 (Where contractor's delay in constructing race track grandstand caused no loss because owner was not licensed to operate, liquidated damages clause providing payment of $1,000 for each day of delay is a penalty).

In sum, the judge should first determine whether the actual damages to the defendants are difficult to ascertain. If they are, in view of the reasonableness of the forecast of those damages, the liquidated damages provision should be enforced. If not, he should consider whether the sum of $500,000 is so "unreasonably and grossly disproportionate" to, or is "unconscionably excessive" of, the actual damages caused by the breach so as to make the liquidated damages a penalty. See A-Z Servicecenter, Inc. v. Segall, supra. Finally, if the judge determines that the liquidated damages provision is unenforceable, and that the defendants' losses exceed the difference between the contract price and the saleable value of the property at the time of breach, he should award to the defendants the amount of the actual damages.

The judgment is vacated. The trial judge is to receive such further evidence as may be necessary to decide, consistent with the principles expressed in this opinion, the question whether the liquidated damages provision of paragraph 12 of the purchase and sale

Shapiro v. Grinspoon :: 1989 :: Massachusetts Appeals Court Deci...     Case 1:20-cv-11535   Document 1   Filed 08/14/20   Page 41 of 41

https://law.justia.com/cases/massachusetts/court-of-appeals/1989/

agreement is enforceable or, if not, to determine whether the defendants are entitled to recover actual damages.

So ordered.

NOTES

[1] Laurence J. Shapiro, an original plaintiff, died on December 30, 1988, and the administratrix of his estate has been substituted.

[2] Robert P. Regan.

[3] William W. Young, who, with Grinspoon, was a general partner in a limited partnership called The Regency Park, and Richard M. Gaberman, attorney for Regency and escrow agent for the transaction which is the subject of this case.

[4] We refer throughout to the original plaintiffs.

[5] In the plaintiffs' statement of facts and throughout their brief, they all but ignore the judge's findings and instead make record references to testimony and exhibits. In addition, the statement of facts is improperly rife with argument, based on the plaintiffs' indulgent adoption of evidence favorable to them. No contention is made that any of the judge's findings is clearly erroneous. See Mass.R.Civ.P. 52(a), 365 Mass. 816 (1974). We, of course, accept those findings, which are fully supported by the evidence.

[6] The judge found that, since the execution of the letter of intent, the plaintiffs had made "minimal and unsuccessful efforts" to obtain financing. On April 17 and 18, 1986, an associate of Shapiro's informed the defendants that the reason the deal did not go through as planned was that the plaintiffs were unable to obtain financing.

[7] As the judge found here sophisticated businessmen experienced in the field of real estate development.

[8] In the agreement with the plaintiffs, there was also an apartment vacancy rent escrow provision. This is of no moment, however, as the plaintiffs did not make any payment pursuant to it.

[9] The judge did note that the evidence offered by the defendants to show actual damages from the plaintiffs' breach (in relation to the subsequent sale) to support the figure of $500,000 was "sketchy and inadequate."